2026 IL App (1st) 241781-U

No. 1-24-1781

Order filed January 23, 2026

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| CALEB HARPER, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 21 D 7824 |
| | ) | |
| v. | ) | Honorable |
| | ) | Bernadette Barrett, |
| LANA HARPER, | ) | Judge, Presiding. |
| | ) | |
| Respondent-Appellant. | ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mitchell  and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm 1) that there was no abuse of discretion where the circuit court divided
        marital assets, consisting of future undefined income for work created during the
        marriage, and  respondent failed to prove by clear and convincing evidence that the
        downpayment made on the marital home was not a gift of non-marital funds; and
        2) that the circuit court's denial of respondent's dissipation claim, upon sufficient
        rebuttal, was not against the manifest weight of the evidence.

¶ 2    Respondent, Lana Harper, appeals from an order of the circuit court of Cook County dissolving her marriage to petitioner, Caleb Harper. On appeal, Lana contends that the circuit court erred: (1) in awarding 50% of her advances and book royalties for written works produced during the marriage and works produced after dissolution of the marriage, including those received post-decree, without any end date; (2) in awarding 50% of the net proceeds from the sale of a residence purchased using respondent's nonmarital assets; and (3) in failing to consider respondent's dissipation claim and petitioner's voluntary unemployment. For the following reasons, we affirm.

¶ 3                              BACKGROUND

¶ 4    Caleb and Lana were married on September 15, 2018, in Cambridge, Massachusetts. They have one child born during the marriage, L.H., born November 26, 2019. On September 9, 2021, Caleb filed a petition for dissolution of marriage based on irreconcilable differences. On September 1, 2022, Lana filed a notice to claim dissipation, and on December 7, 2022, Lana filed a counter-petition for dissolution of marriage. Lana's counter-petition was dismissed with prejudice after the case proceeded to trial on the petitions for dissolution of marriage on April 24, 25, and 27, 2023. The circuit court entered an amended judgment for dissolution of marriage on June 28, 2024.[1]

¶ 5    At trial, the parties executed and entered trial stipulations that were read into the record that identified and memorialized the parties' backgrounds, established the grounds for the dissolution of marriage, provided for the waiver of maintenance by both parties, provided for setting child support at zero dollars with the parties equally sharing (50/50) the child's out-of-

---

[1] A previously entered judgment for dissolution of marriage was withdrawn on Lana's emergency motion to set aside the Judgment of Dissolution dated August 24, 2023, and amended judgment for dissolution dated June 17, 2024.

pocket expenses, provided that the parties had joint decision-making responsibilities for the child, and admitted certain exhibits related to financial issues in the case, including but not limited to: cash and cash equivalents, investment accounts/deferred compensation, retirement plans, insurance policies, liabilities and expenses. The stipulated exhibits admitted at trial were: (1) each party's financial affidavits, W-2's, 1099's, and income tax returns; (2) Lana's agreements with, and payment from, Penguin Random House and Village Roadshow Entertainment Group USA, Inc.; (3) Lana's offer letter from Rexair LLC; (4) previously produced copies of the parties' personal and corporate bank, retirement, pension, and credit card account statements; (5) SNF Lincoln Operating Company subscription agreement and proof of investment; (6) Caleb's MIT documents; (7) Caleb's offer letter from Dairy Management Inc. and confirmation of termination of employment; (8) Dairy Management Inc.'s agreement with Caleb, dated February 28, 2022, and the agreement between Dairy Management Inc. and Cultivating the Future LLC dated February 21, 2023; and (9) the agreement between Dairy Research Institute and Cultivating the Future LLC dated February 21, 2023. At trial, a group exhibit related to real property located at 2110 West Superior Street in Chicago was offered and admitted into evidence by Caleb without objection from Lana. The group exhibit consisted of a Warranty Deed dated June 9, 2020, and a Warranty Deed dated October 22, 2021.

¶ 6    The judgment also delineated the stipulated assets and liabilities of the parties without a delineation of marital/non-marital characterization as follows:

| ASSET | TITLE |
|---|---|
| **Escrowed proceeds from the sale of 2110 West Superior Street, Chicago, Illinois** | Caleb<br>Lana |
| **Business & Property Interest** | |

| | |
|---|---|
| Cultivating the Future, LLC | Caleb |
| Royalty Income, advances against royalties, residual income or other compensation for any literary works written during the marriage, including Payback's a Witch, From Bad to Cursed, Back in a Spell, and In Charm's Way<br><br>Royalty income, advances against royalties, residual income or other compensation for the residual rights, movie rights or show rights for any literary works written during the marriage, including, Payback's a Witch, From Bad to Cursed, Back in a Spell, and In Charm's Way | Lana |
| **Checking/Savings/MM/CDs** | |
| Bank of American Savings x5993 | Caleb |
| Bank of America Checking x4301 | Caleb |
| Bank of America Checking x9368 | Caleb |
| Bank of America Checking x5129 | Lana and her parents |
| Bank of America Checking x1371 | Lana |
| Bank of America Savings x8676 | Lana |
| **Investment Accounts/Stocks** | |
| SNF Lincoln Investment | Caleb |
| **Retirement Accounts** | |
| UDIA Thrift Savings Plan | Caleb |
| MIT Supplemental 401(k) | Caleb |
| Bank of American SEP IRA | Caleb |
| MIT Pension Fund | Caleb |
| **Automobiles** | |
| 2011 Lincoln Navigator | Caleb |
| 2018 Mini Cooper | Lana |
| **DEBTS** | |
| Heartland ECSI Student Loans | Caleb |
| Discover Credit Card x8157 | Caleb |
| American Express Credit Card x3005 | Caleb Business (Cultivating the Future) |
| Bank of America Credit Card x5440 | Lana |
| 2021 Tax Liability | Caleb<br>Lana |

¶ 7 The judgment noted that, pursuant to 750 ILCS 5/501(d)(2) (West 2022), Lana filed a Notice of Intent to Claim Dissipation on September 1, 2022. The transactions related to the claim of dissipation occurred after the marriage underwent an irretrievable breakdown, and specifically

after Caleb filed his Petition for Dissolution of Marriage on September 9, 2021. Lana's Notice of Dissipation contained specific claims that include the source of the dissipated funds, the dates the funds were dissipated, and the amounts of dissipated funds. Further, the judgment noted that the specific acts of dissipation depended on the facts of the case at issue. Pursuant to Illinois law, Caleb then had the burden of proving, by clear and convincing evidence, that he did not dissipate those assets. Lana's dissipation claim was based on (a) waste and reckless use of marital funds and a failure to preserve such funds; and (b) payments totaling $24,811.48 for non-marital purposes. The only witnesses who testified at trial were Caleb and Lana.

¶ 8    After hearing the testimony of the parties, considering the witnesses' credibility and demeanor, having received and considered the stipulations of the parties, having reviewed the pleadings, the common law record, the full transcript of the proceedings, relevant case law, and all pertinent statutes, the circuit court made the following findings, in pertinent part:

A. The bonds of matrimony between Caleb and Lana were dissolved pursuant to statute;

B. The date of valuation for the purposes of division of assets and liabilities was April 25, 2023;

C. Caleb stipulated and acknowledged that he was self-supporting through sufficient income and appropriate property ownership to provide for his reasonable needs for maintenance and support; waived all rights to claim and receive maintenance from Lana, past, present and further and was forever barred from receiving maintenance from Lana;

D. Lana stipulated and acknowledged that she was self-supporting through sufficient income and appropriate property ownership to provide for her reasonable needs for maintenance

and support; waived all rights to claim and receive maintenance from Caleb, past, present and further and was forever barred from receiving maintenance from Caleb;

E. Each party was deemed the sole and exclusive owner of all of his or her personal effects, clothing, jewelry (including engagement and wedding rings), and personal belongings. The parties had divided amongst themselves all furniture, artwork, appliances, wedding gifts, and items of personal adornment to their mutual satisfaction when they separated in 2021. Each party was awarded the property in their possession and control free and clear of any claims from the other party;

F. Each party was deemed solely responsible for payment of his or her individual debts and liabilities, including but not limited to promissory notes, family loans, lines of credit, credit cards in his or her respective name, and/or PayPal accounts. Specifically, Caleb was solely responsible for the following: (1) Heartland ECSI Student Loans, (2) Discover Credit Card x8157 and American Express Credit Card x3005; Lana was solely responsible for Bank of America Credit Card x5440;

G. The 2021 Tax Liability was deemed a marital debt and paid by Caleb with marital funds. The court found that Lana would reimburse Caleb 50% of the marital debt upon entry of the judgment with funds from Lana's share of the funds held in escrow from the proceeds of the former marital residence;

H. Each party was solely responsible for their respective attorney fees and costs;

I. Each party was solely responsible for their own health care costs and insurance obligations;

J. Caleb was awarded all non-marital property in his name, possession, and control, that was acquired prior to September 15, 2018, including but not limited to:

    a. SNF Lincoln Investment

    b. Cultivating the Future, LLC

    c. Bank of American SEP IRA- 100% of all contributions made prior to September 15, 2018, together will all earnings and losses associated with said contributions;

    d. MIT Supplemental 401(k)- 100% of all contributions made prior to September 15, 2018, together with all earnings and losses associated with said contributions;

    e. MIT Pension Fund- 100% of all contributions made prior to September 15, 2018, together with all earnings and losses associated with said contributions;

K. Lana was awarded all non-marital property in her name, possession, and control that was acquired prior to September 15, 2018;

L. Caleb was awarded the following marital assets, as his sole and separate property, free and clear of any interest from Lana:

    a. 2011 Lincoln Navigator titled solely in his name, possession, and control

    b. Bank of America SEP IRA- 50% of all contributions, if any, made between September 15, 2018, and April 25, 2023, together with all earnings and losses associated with said contributions;

    c. MIT Supplemental 401(k)- 50% of all contributions, if any, made between September 15, 2018, and April 25, 2023, together with all earnings and losses associated with said contributions;

    d. MIT Pension Fund- 50% of all contributions, if any, made between September 15, 2018, and April 25, 2023, together with all earnings and losses associated with said contributions;

e. UDIA Thrift Savings Plan- 50% of all contributions, if any, made between September 15, 2018, and April 25, 2023, together with all earnings and losses associated with said contributions;

f. Escrowed Proceeds from the sale of 2110 West Superior Street, Chicago, Illinois – 50% of the escrowed funds PLUS $14,617.50 from Lana's share for reimbursement of 50% of the 2021 Income Tax Liability;

g. 50% of any royalty income, advances against royalties, residual income or other compensation for any literary works written during the marriage, including Payback's a Witch, From Bad to Cursed, Back in a Spell, and, In Charm's Way, which are generated, disbursed and/or received on and after April 26, 2023. Lana shall calculate the net amount by subtracting her customary agent fee and estimated taxes (to be "trued up" upon the next following tax return) and tendering 50% of the net amount to Caleb, together with copies of payments received, accountings and adjustments against said monies received, and Lana shall tender payment to Caleb within 14 days of receipt of funds. Lana shall provide documentation for any funds received from April 26, 2023, to the date of entry of the judgment within 14 days and shall tender payment within 28 days from the entry of the judgment;

h. 50% of any royalty income, advances against royalties, residual income or other compensation for the residual rights, movie rights or show rights for any literary works written during the marriage, including Payback's a Witch, From Bad to Cursed, Back in a Spell, and, In Charm's Way, which are generated, disbursed and/or received on and after April 26, 2023. Lana shall calculate the net amount by

subtracting her customary agent fee and estimated taxes (to be "trued up" upon the next following tax return) and tendering 50% of the net amount to Caleb, together with copies of payments received, accountings and adjustments against said monies received, and Lana shall tender payment to Caleb within 14 days of receipt of funds. Lana shall provide documentation for any funds received from April 26, 2023, to the date of entry of the judgment within 14 days and shall tender payment within 28 days from the entry of the judgment

M. Lana was awarded the following marital assets as her sole and separate property, free and clear of any interest from Caleb:

a. 2018 Mini Cooper titled solely in her name, possession and control

b. Bank of America SEP IRA- 50% of all contributions, if any, made between September 15, 2018, and April 25, 2023, together with all earnings and losses associated with said contributions

c. MIT Supplemental 401(k)- 50% of all contributions, if any, made between September 15, 2018, and April 25, 2023, together with all earnings and losses associated with said contributions

d. MIT Pension Fund- 50% of all contributions, if any, made between September 15, 2018, and April 25, 2023, together with all earnings and losses associated with said contributions

e. UDIA Thrift Savings Plan- 50% of all contributions, if any, made between September 15, 2018, and April 25, 2023, together with all earnings and losses associated with said contributions

f.  Escrowed Proceeds from the sale of 2110 West Superior Street, Chicago, Illinois – 50% of the escrowed funds LESS $14,617.50 from her share for reimbursement of 50% of the 2021 Income Tax Liability;

g.  50% of any royalty income, advances against royalties, residual income or other compensation for any literary works written during the marriage, including Payback's a Witch, From Bad to Cursed, Back in a Spell, and, In Charm's Way, which are generated, disbursed and/or received on and after April 26, 2023. Lana shall calculate the net amount by subtracting her customary agent fee and estimated taxes (to be "trued up" upon the next following tax return) and tendering 50% of the net amount to Caleb, together with copies of payments received, accountings and adjustments against said monies received, and Lana shall tender payment to Caleb within 14 days of receipt of funds. Lana shall provide documentation for any funds received from April 26, 2023, to the date of entry of the judgment within 14 days and shall tender payment within 28 days from the entry of the judgment. Thereafter, Lana shall retain her 50% share free and clear of any interest of Caleb beginning April 26, 2023;

h.  50% of any royalty income, advances against royalties, residual income or other compensation for the residual rights, movie rights or show rights for any literary works written during the marriage, including Payback's a Witch, From Bad to Cursed, Back in a Spell, and, In Charm's Way, which are generated, disbursed and/or received on and after April 26, 2023. Lana shall calculate the net amount by subtracting her customary agent fee and estimated taxes (to be "trued up" upon the

next following tax return) and tendering 50% of the net amount to Caleb, together with copies of payments received, accountings and adjustments against said monies received, and Lana shall tender payment to Caleb within 14 days of receipt of funds. Lana shall provide documentation for any funds received from April 26, 2023, to the date of entry of the judgment within 14 days and shall tender payment within 28 days from the entry of the judgment;

N. Caleb was awarded any and all other bank, investment, and retirement accounts in his own name free and clear of any claim or interest from Lana, including but not limited to:

    a. Caleb Bank Savings

    b. Caleb Bank Checking #1

    c. Caleb Bank Checking #2 and

    Lana was awarded any and all other bank, investment, and retirement accounts in her own name free and clear of any claim or interest from Caleb, including but not limited to:

    d. Lana Bank Checking #1

    e. Lana Bank Checking #2

    f. Lana Bank Savings;[2]

* * *

Q. Lana's claim for dissipation was denied. The court found that Caleb sufficiently rebutted the dissipation claim by way of his testimony and the introduction of trial exhibits evidencing

---

[2] The banking institution names and identifying account numbers have been redacted.

the expenses. Additionally, the court found Caleb's testimony credible as it related to the basis for leaving his employment to afford him and the minor child a chance to nurture a relationship given the impending divorce. Specifically, the toll and negative impact the extensive travel and responsibilities of his former job would have on establishing and maintaining a healthy and loving bond with the minor child. Further, the court found Lana's testimony lacked credibility when it came to her rationale for her spending habits during the same period which included her spending the vast majority of the advances of royalties received during the same duration of time; ***.

¶ 9 Lana filed a motion to reconsider after judgment in nonjury cases pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2024)) on the same date, June 28, 2024, contending that the circuit court erred (1) in its parenting time determination; (2) in its treatment of Lana's book royalties; (3) in its distribution of net equity in the real estate and the 2021 tax liability; and (4) in failing to consider Lana's dissipation claim and Caleb's voluntary underemployment. The circuit court partially granted the motion on August 27, 2024, related to the 2021 tax liability, but denied the remaining counts. Lana's notice of appeal was filed on September 6, 2024.

¶ 10 Oral argument was held on December 2, 2025. Prior to oral argument, Lana through her appellate counsel filed several motions in both the circuit court and this court to supplement the record with the trial exhibits that were denied. At oral argument, both parties conceded that the trial exhibits that were admitted into evidence were not included as part of the record prepared by the circuit court. On its own motion, this court remanded the matter to the circuit court to enter an order allowing the inclusion of the trial exhibits as a supplemental record for filing in this appeal

on December 5, 2025. The supplemental record was prepared and Lana filed a motion to file the supplemental record on January 7, 2026, which was granted on January 8, 2026.

¶ 11                                          ANALYSIS

¶ 12    On appeal, Lana contends that the circuit court erred: (1) in awarding 50% of her advances and book royalties for written works produced during the marriage and works produced after dissolution of the marriage, including those received post-decree, without any end date; (2) in awarding 50% of the net proceeds from the sale of a residence purchased using respondent's nonmarital assets; and (3) in failing to consider respondent's dissipation claim and petitioner's voluntary unemployment. We consider these contentions in turn.

¶ 13                          A. Statutory Framework and Standard of Review

¶ 14    The proper division of marital property rests within the sound discretion of the circuit court, and the circuit court's property distribution will not be disturbed absent an abuse of discretion. *In re Marriage of Johnson*, 2016 IL App (5th) 140479, ¶ 74. An abuse of discretion occurs when no reasonable person would take the view adopted by the circuit court. *Id.*

¶ 15    When determining the distribution of a marital estate, the circuit court must first determine what constitutes marital property and what constitutes non-marital property. *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 65. All of the property of the parties to a marriage belongs to one of three estates, namely, the estate of the husband, the estate of the wife, or the marital estate. *Id.* ¶ 68. Section 503 of the Illinois Marriage and Dissolution Act (Act) requires a circuit court to classify property as either marital or nonmarital in order to assign or divide it upon a marriage dissolution. 750 ILCS 5/503 (West 2024). The circuit court's classification of property as marital

or nonmarital will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. *Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 68.

¶ 16    As a general rule under the Act, property acquired by either spouse after the marriage, but prior to a judgment of dissolution, is presumed to be marital property regardless of how title is actually held. 750 ILC 5/503(b) (West 2024). This includes property held solely in one party's name. *Id*. Subsection (a) of section 503 of the Act provides exceptions to this rule including "property acquired by gift, legacy or descent" or "income from property acquired by a method listed in paragraphs (1) through (7) of this subsection." 750 ILCS 5/503(a)(1), (8) (West 2024). Thus, property acquired during the marriage is presumed to be marital property unless it is shown by clear and convincing evidence that the property falls within one of the statutory exceptions listed in subsection (a). 750 ILCS 5/503(a), (b) (West 2024).

¶ 17                    B. Advances and Book Royalties

¶ 18    Lana first maintains that the circuit court erred in awarding 50% of her advances and book royalties for her written works that were produced during the marriage and works after dissolution of the marriage, including those received post-decree without any end date. In support of this contention, Lana argues that the 50% award to Caleb was punitive, inequitable and a double dip; analogous cases around the country award less than 50% of royalties; barring Lana's testimony on royalties and advances was erroneous and prejudicial; and advances against royalties have never been considered by this court.

¶ 19    We must first correct Lana's misnomer that the dissolution judgment included a 50% share to Caleb of advances and book royalties for works after dissolution of the marriage including those received post-decree without any end date. That is not an accurate representation of the dissolution

judgment. As indicated above, the dissolution judgment awarded to Caleb, as marital property, 50% of all advances, book royalties and any future residual rights, movie rights and show rights associated with those written works produced during the marriage. We read this language to limit his interest of 50% only to any advances, book royalties, future residual rights movie/show rights associated with the specific written works identified within the dissolution judgment, namely "Payback's a Witch," "From Bad to Cursed," "Back in a Spell," and, "In Charm's Way, " which the parties stipulated were the only works written and or produced during the marriage and does not extend to any royalties etc. that result from written works she may produce after the dissolution judgment.

¶ 20    Turning to the rest of Lana's argument, we find that the circuit court's allocation of 50% of the proceeds related to Lana's written works produced during the marriage was not an abuse of discretion. As noted above, all property acquired by either party during the marriage is marital property, regardless of how it is titled. This would include Lana's books and related income, which she acknowledges were written during the marriage. However, Lana argues that three of the books were written while the parties were separated. This is of no consequence as the parties did not have a court-ordered legal separation; it is the date of the dissolution judgment that controls. In other words, the books that Lana wrote during the marriage, including those written while the parties were separated, and any corresponding income (advances or royalties), were properly classified as marital property.

¶ 21    The record reveals that the circuit court set forth a detailed breakdown of the parties' various assets and essentially divided their marital property in a 50/50 split, including the books (written works). Lana's books earned income during the parties' marriage that was classified as

marital property. The circuit court also included as marital property any future advances, royalties and movie/screen rights based on those same written works that were produced during the marriage. This was not an abuse of discretion because such income would still be based only on those written works produced during the marriage which is marital property.

¶ 22    As such, we find no abuse of discretion in the circuit court's 50/50 division of the marital estate related to income gleaned from Lana's books that were written during the marriage.

¶ 23                    C. Proceeds from the Sale of the Marital Residence

¶ 24    Next, Lana contends that the circuit court erred in awarding 50% of the net proceeds from the sale of the 2110 West Superior residence in Chicago to Caleb as marital property when the property was purchased using Lana's non-marital assets. Lana argues that she contributed $509,867.90 as a downpayment for the marital property that was not intended to be a gift; the funds came from the sale of a property in Massachusetts that she jointly owned with her father prior to the marriage. Caleb also testified that the downpayment funds for the Chicago residence came from Lana, traceable back to an apartment gifted to Lana by her parents during law school, which sale proceeds were used to buy the Massachusetts property and then the Chicago property. Lana cites section 503(b)(1) of the Act in support of her argument that the downpayment was not a gift. Lana further contends that "Caleb's nominal contribution to the [Massachusetts] residence is irrelevant to the downpayment used for Chicago unless he was making a reimbursement claim, which he did not."

¶ 25    Section 503(b)(1) of the Act provides that:

        "[f]or purposes of distribution of property, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of

invalidity of marriage is presumed marital property. This presumption includes non-marital property transferred into some form of co-ownership between the spouses, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by showing through clear and convincing evidence that the property was acquired by a method listed in subsection (a) of this Section or was done for estate or tax planning purposes or for other reasons that establish a transfer between spouses that was not intended to be a gift." 750 ILCS 5/503(b)(1) (West 2024).

¶ 26   We disagree with Lana's interpretation and application of section 503(b)(1). The record indicates that the Massachusetts property was sold in 2020, during the marriage. There was no testimony or factual finding by the circuit court that the sales proceeds were isolated from any joint accounts of the parties. While it is true that Lana's share of the proceeds from the sale of the Massachusetts property could have been considered non-marital property, pursuant to section 503(b)(1), marital property includes non-marital property transferred into some form of co-ownership between the spouses. Applying that section to the circumstances presented here, it could be reasonably inferred that Lana converted her non-marital asset, namely the sales proceeds from the Massachusetts property, into marital property when she used that asset to fund the downpayment on the parties' marital home, which they co-owned. Lana failed to overcome the presumption of marital property by clear and convincing evidence. We therefore find that the circuit court did not err in classifying the marital home as marital property and splitting the sales proceeds 50/50 between the parties.

¶ 27                              D. Dissipation Claim

¶ 28    Finally, Lana contends that the circuit court erred in failing to consider Lana's dissipation claim and Caleb's voluntary unemployment.

¶ 29    A circuit court's determination of whether a spouse dissipated marital assets is reviewed under the manifest weight of the evidence standard. *Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 107. A decision is said to be against the manifest weight of the evidence where the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based on the evidence. *Id.*

¶ 30    A spouse dissipates marital assets when he or she uses marital property for his or her own benefit for a purpose unrelated to the marriage when the marriage is undergoing an irreconcilable breakdown. *Id.* ¶ 108. In dividing the marital estate, the circuit court may consider a spouse's dissipation of marital and nonmarital assets. 750 ILCS 5/503(d)(2) (West 2024). The spouse charged with dissipation bears the burden of establishing by clear and convincing evidence how the funds were spent. *Marriage of Foster,* 2014 IL App (1st) 123078, ¶ 108. Whether a course of conduct constitutes dissipation depends on the facts of the particular case. *Id.* The circuit court is not required to charge against a party the amounts found to have been dissipated but may do so. *Id.*

¶ 31    We first note that Lana's position is once again a misrepresentation of what happened in the circuit court. Clearly the circuit court considered Lana's dissipation claim as the judgment for dissolution of marriage clearly addressed that claim in section Q. Specifically, the circuit court found that Caleb sufficiently rebutted Lana's claim with detailed evidence that traced the expenses claimed to have been dissipated by testimonial evidence and exhibits regarding the funds in questions. The circuit court found Caleb's testimony credible regarding why he left his

employment with respect to building a relationship with his young son during the divorce and further found Lana's testimony was not credible regarding her own spending of royalty proceeds during the same period. We find Lana's arguments on appeal regarding Caleb's reasons for his actions to be speculative at best and merely amount to a disagreement with the circuit court's findings. Based on the record before us, we do not find that the circuit court's denial of Lana's dissipation claim to be against the manifest weight of the evidence.

¶ 32                                    CONCLUSION

¶ 33     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 34     Affirmed.